UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

WILLIAM EDWARD HAAB            CIVIL ACTION NO. 16-cv-1663

VERSUS            MAGISTRATE JUDGE HORNSBY

CITY OF BOSSIER CITY

**MEMORANDUM RULING**

**Introduction**

William Edward Haab ("Plaintiff") is a deaf resident of Bossier City who primarily communicates using American Sign Language ("ASL"). His status as a sex offender requires that he register with law enforcement agencies including the Bossier City Police Department. Plaintiff alleges that the Department violates the Americans with Disabilities Act because it does not provide adequate access to an ASL interpreter.

Plaintiff filed this action against the City of Bossier City and requested class action status. Before the court is Plaintiff's Motion for Class Certification (Doc. 18) that proposes the certification of a class defined as:

> All deaf or hard of hearing persons who communicate in American Sign Language and have interacted with, or have cause to interact with, the Bossier City Police Department in a non-emergency setting.

Plaintiff seeks only declaratory and injunctive relief. No damages are at issue. The City opposes class certification on several grounds. For the reasons that follow, the motion for class certification is denied.[1]

**Class Action Requirements**

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Califano v. Yamasaki, 99 S.Ct. 2545 (1979). To come within the exception, the party seeking to maintain a class action "must affirmatively demonstrate his compliance" with Rule 23. Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551-52 (2011).

A class action is proper only if all requirements of Rule 23(a) are met and one of the provisions of Rule 23(b) is satisfied. Rule 23(a) states that a class is proper only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. These requirements are not mere pleading standards, and the party seeking certification must be able to prove that there are in fact numerous parties, common questions, etc. Comcast Corp. v. Behrend, 133 S.Ct. 1426, 1431 (2013), citing Dukes.

---

[1] Plaintiff filed suit against the Bossier Parish sheriff and asserted claims similar to those in this suit in Haab v. Sheriff Julian Whittington, 17-cv-0673. Plaintiff also sued a local hospital and alleged that it failed to provide adequate video interpreting services for the deaf. That case settled. Haab v. Willis-Knighton Medical Center, 16-cv-1722. Plaintiff did not request class certification in either of those cases.

With respect to Rule 23(b), Plaintiff relies on Rule 23(b)(2). That rule allows certification of a class if the court finds that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

To determine whether certification is appropriate, the court "must conduct intense factual investigation." Robinson v. Texas Auto Dealers Assn., 387 F.3d 416, 420 (5th Cir. 2004). A court must rigorously analyze Rule 23's requirements, and that requires an understanding of the relevant claims, defenses, facts, and substantive law presented in the case. Funeral Consumers Alliance, Inc. v. Service Corporation International, 695 F.3d 330, 345 (5th Cir. 2012). The analysis will often overlap with the merits of the plaintiff's underlying claim because class determination "generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Comcast, 133 S.Ct. at 1432, quoting Dukes, 131 S.Ct. at 2551.

**Relevant Facts**

Plaintiff was convicted of molestation of a juvenile in the 1990s and served a term in prison. After his release, he was required to register as a sex offender, and he testified at his deposition that he will have to continue to register until 2023. He is a resident of Bossier City, and he registers twice a year with the Bossier Parish sheriff and once a year with the Bossier City police. He has a job in Shreveport (Caddo Parish), so he also registers in that jurisdiction.

Plaintiff stated in a declaration under penalty of perjury that he is deaf and communicates primarily using ASL. Plaintiff said that he is "not great at reading and

writing" and needs an ASL interpreter to understand what is being communicated to him by police officers, doctors, lawyers, and others. Plaintiff stated that he has asked the Bossier City police "many times" for an ASL interpreter during his scheduled meetings so that he can ask questions and understand everything that is happening. But, before filing this lawsuit, the Bossier police never provided him with an ASL interpreter. Plaintiff stated that, as a result, he was never able to communicate effectively with the police or understand everything they were saying to him. He also cited an instance from several years ago when he had an issue with his roommate, contacted the Bossier police for help, and asked for an ASL interpreter. The interpreter was not provided.

Bossier City responded to the allegations by pointing to its General Order No. 13-05. Doc. 18, Exhibit E. It provides that "an interpreter/translator will be obtained, whenever a hearing-impaired person is arrested or is to be interviewed relative to an incident." It adds that the officer involved shall notify the communications division to call for an interpreter/translator, and a referral list will be maintained in the communications division. The policy also notes that the Deaf Action Center of Northwest Louisiana (located in Shreveport) maintains a 24-hour list of certified interpreters for the hearing impaired. Plaintiff points out that the policy is limited to interaction with arrestees and persons interviewed relative to an "incident," and he contends that interpreters are not actually provided despite the provisions of the policy.

The City submitted a declaration from Kevin Humphrey, an employee of the police department whose responsibilities include verifying the registration of sex offenders. Humphrey explained that the registration process requires the offender to pay a small fee,

provide fingerprints, and nothing else. Plaintiff has been registered with the City since 2005. In April 2016, Plaintiff submitted for the first time a written request that the City provide an ASL interpreter in connection with his 2016 registration.

Humphrey testified that he contacted the Clerk of the City Court and asked for references and contact information for interpreters. He received two contacts, reached out to both, but did not receive a response. He also contacted the Deaf Action Center in Shreveport, but again he did not receive a response.

According to Humphrey, when Plaintiff visited the police department in May 2016 to complete his registration Humphrey and another officer communicated with Plaintiff by writing notes in a notebook. The officers told Plaintiff that they had tried to contact three different interpreters, but without success. They asked Plaintiff what questions he had. He asked about a past incident where he was arrested for failing to register, and they directed him to an appropriate employee with the sheriff to address that matter. Plaintiff also asked about the number of times he was required to register, and that information was provided. The officers asked Plaintiff if he wanted to complete his registration that day. He answered yes, and he successfully completed the process.

Plaintiff was directed to contact Mr. Humphrey or Kevin Little if he had questions during future registrations, and he was told that the Department would try to make an interpreter available if requested. The officers offered to make an interpreter available later if Plaintiff had additional questions, but Plaintiff did not make any request and appeared satisfied with the meeting.

After Plaintiff filed this suit, his attorney advised the court that he intended to file a motion for preliminary injunction before the next registration date in May 2017. The matter was resolved when the court directed counsel for Plaintiff to contact defense counsel regarding the accommodations needed by Plaintiff and ordered the parties to cooperate in good faith so that Plaintiff could successfully register by the deadline. Doc. 10. Humphrey testified that Plaintiff did complete his registration in May 2017.

Humphrey stated that he reviewed incident reports regarding instances where the Bossier City police have interacted with Plaintiff. Not including his sex offender registrations, Plaintiff has interacted with the Department 12 times since 2004. According to the reports, Plaintiff requested an interpreter only once, in January 2017, in connection with a disagreement with his ex-girlfriend. Plaintiff testified at his deposition that he called the police regarding that incident, insisted on an interpreter because both parties were deaf, and an interpreter was made available and assisted in resolving the conflict to Plaintiff's satisfaction.

**Numerosity**

Rule 23(a)(1) provides that a member of a class may sue as a representative party on behalf of all members only if "the class is so numerous that joinder of all members is impracticable." The mere number of members in a proposed class is not determinative of whether joinder is impracticable. Courts must obviously look to the numbers, but they should also consider the geographical dispersion of the class, the ease with which members may be identified, the nature of the action, the size of each claim, and the judicial economy arising from avoiding multiple actions. In Re: TWL Corp., 712 F.3d 886 (5th Cir. 2013).

With that said, the Fifth Circuit has recognized that a putative class of 100 to 150 members is within the range that generally satisfies the numerosity requirement. Mullen v. Treasure Chest Casino, LLC, 186 F.3d 620, 624 (5th Cir. 1999). A treatise has noted that as a "general guideline" a class with fewer than 20 members "will likely not be certified absent other indications of impracticability of joinder, while a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone." 1 Newberg on Class Actions, § 3:12 (5th ed.). The numbers are relevant, but really only to determine whether the court should overlook the preference that litigation be conducted by present, joined litigants, rather than by class representatives, because the members of the class are so numerous that joinder of the individuals in one suit is impracticable and makes judicial economy weigh in favor of representative litigation. 1 Newberg on Class Actions, § 3:11 (5th ed.).

Plaintiff stated in his declaration that he was "aware of other people in the deaf and hard-of-hearing community that had difficulties with the Bossier City Police not providing them an ASL interpreter." He also said that he was aware of other people in the deaf and hard-of-hearing community who are afraid to interact with the Bossier police for fear of not being able to communicate or get the help they need. Plaintiff was asked at his deposition if he knew how many deaf or hard-of-hearing individuals lived in Bossier City. Plaintiff said he was not sure, but he knew of three deaf sex offenders in the Bossier/Shreveport area. He was one of them, and the other two lived in Shreveport, leaving Plaintiff as the only deaf sex offender who lived in Bossier City. Plaintiff was not

aware of whether either of the Shreveport residents had to register in Bossier City for work or other reasons.

Plaintiff was shown his declaration where he stated he was aware of other people who had difficulty communicating with the Bossier police. He was asked to list the people he was referring to when he made that statement. Plaintiff referred to his earlier testimony about the other two sex offenders. One of them had lived in Benton (which is in Bossier Parish), but had moved to Shreveport. Plaintiff knew the other man only by a nickname, and he also lived in Shreveport.

Defense counsel asked Plaintiff to list every person, not limited to sex offenders, he was aware of who had difficulties with the Bossier City police due to lack of an ASL interpreter. Plaintiff was able to name two sisters, both deaf, who had "been in trouble with the law and experienced the same thing." Plaintiff said he knew there were more, "probably three or four people," but he could not think of any other names. He said, "There may be more, I don't know." But he conceded that it was "a small community." He said there were more deaf residents in nearby Shreveport, maybe eight to 12 persons, but he did not know if any of them ever had any interaction with the Bossier City police.

Plaintiff's counsel argues the courts have relied on statistical evidence, census data, and common sense to assess numerosity when members of a class may be difficult to identify. He suggests that census data from 2016 shows approximately 64,484 people living in Bossier City. He cites publications for the contention that somewhere between 0.2% and 2.8% of Americans are deaf or have a hearing disability. That would result in an estimated 128 to 1,805 residents of Bossier City who are likely deaf or have difficulty

hearing. As for how many of those people communicate in ASL, counsel says that estimates of ASL users are "notoriously unreliable" because federal surveys do not ask about ASL usage. He cites a study from 1972 for the suggestion that at least 0.14 to 0.19% (90 to 123 people) of Bossier residents are both deaf and use ASL at home. Neither statistics nor evidence is offered with respect to how many of those persons have occasion to interact with the city police on a non-emergency basis, or how often they may have such interaction.

The number of known persons with potentially similar claims is small, but Plaintiff testified that there could be additional deaf citizens in the future who would reside in Bossier City or otherwise encounter the Bossier City Police. Some courts have relaxed the numerosity requirement where the putative class seeks injunctive and declaratory relief pursuant to Rule 23(b)(2) and future claimants were possible. The Fifth Circuit has stated, "[s]maller classes are less objectionable where … the plaintiff is seeking injunctive relief on behalf of future class members as well as past and present members." Jones v. Diamond, 519 F.2d 1090, 1100 (5th Cir. 1975). See also Jackson v. Danberg, 240 F.R.D. 145, 147-48 (D. Del. 2007)(finding numerosity where proposed class consisted of only 16 members, but membership in the death row group regularly changed as members were added or executed). That does not mean, however, that any claim for injunctive relief merits class action status without a suitable showing that members of the potential class are so numerous that their joinder is impracticable.

As noted, the law prefers that litigation be conducted by parties who are actually present in the case. But if the number of persons who have similar claims is so numerous

that it is impractical to join them, or if the court would be overrun with several individual suits, a class action may be a proper vehicle to litigate the claims. Certifying a case as a class action is no light matter, because it imposes a substantial burden on the parties and the court to properly administer it. For example, even in an injunction-only suit such as this, where plaintiffs are not afforded notice and opportunity to opt out, Rule 23(e) requires that the court give notice to all class members of a proposed settlement or dismissal, the court must conduct a fairness hearing, and class members may object to the proposal. Furthermore, Rule 23(h) requires that (b)(2) class members receive notice of any claim for an attorney's fees award, and they may voice their objections. 2 Newberg on Class Actions, § 4:36. An individual claim may be resolved without notice to or the potential involvement of other persons who may object to the decisions made by the parties and their counsel.

Plaintiff has not met his burden of showing that there are sufficient number of persons, current or future, who are members of the class he proposes. Plaintiff offers speculation based on statistics, but there is no actual evidence to suggest that those statistics result in real claimants in this situation that warrant an expensive and resource-demanding class action proceeding. If there are three, or eight, or ten such persons in Bossier, the court can accommodate their claims by joining them in this suit or entertaining their individual suits. There is no meaningful showing that there are enough interested claimants to allow Plaintiff to litigate their claims on their behalf rather than allowing them to pursue their own claims. Furthermore, a win by Plaintiff in an ordinary civil action will likely result in an injunction that will, for practical purposes, equally benefit the other members of the community whether they are parties, non-parties, or members of a class. Accordingly, the

**Motion for Class Certification (Doc. 18)** is **denied**. The court need not address the other objections raised by the City.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 8th day of March, 2018.

Mark L. Hornsby
U.S. Magistrate Judge